UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Clean Water and Air, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Tofte Wastewater Treatment Association d/b/a Bluefin Bay on Lake Superior WWTP,<br><br>Defendant, | Case No.:<br><br><br><br>**CLASS ACTION COMPLAINT** |

## **PRELIMINARY STATEMENT AND FACTS**

1. This is a citizen enforcement action brought to address Bluefin Bay's past and ongoing violations of the federal Clean Water Act, 33 USC § 1251 et. seq. (CWA) on an individual basis, together with causes of action sounding in nuisance and negligence individually, and on behalf of itself and all others similarly situated.

2. For years, Defendant Tofte Wastewater Treatment Association d/b/a Bluefin Bay on Lake Superior WWTP (Bluefin Bay) has polluted the pristine waters of Lake Superior with Mercury, Fecal Matter, Coliform and Suspended Solids.

3. According to the Environmental Protection Agency, Bluefin Bay has violated its Clean Water Act permit on three-hundred and twelve (312) days since November 30, 2018, has failed to comply with its Clean Water Act permit for 7 out of 12 quarters, and is currently in violation of its Clean Water Act Permit.

4. This action seeks relief including, but not necessarily limited to, a declaration that Bluefin Bay has and continues to violate the terms of its Clean Water Act National Pollutant Discharge Elimination System (NPDES) permit; an order requiring Bluefin Bay to comply with the Clean Water Act and its NPDES permit; an order assessing the maximum penalties available under the law against Bluefin Bay for each day it has and continues to violate the terms of its NPDES permit; an award to Plaintiff of its costs of litigation including reasonable attorney's and expert's fees; damages pursuant to Plaintiff's nuisance and negligence claims, punitive damages, and such other relief as the Court deems appropriate.

## PARTIES

5. Plaintiff is an organization formed for the purpose of advocating for clean waterways and air and the preservation of natural resources by seeking to ensure enforcement of the country's environmental laws.

6. Bluefin Bay is located on the North Shore of Lake Superior, in Tofte, Minnesota (Tofte). Bluefin Bay discharges wastewater directly into Lake Superior pursuant to the its ("NPDES") permit No. MN-0054593.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331.

8. Venue lies with this Court under 33 U.S.C. § 1365(c)(1) because the Facility at issue is located in this District.

## DEFENDANT'S POLLUTION AND REPEATED VIOLATIONS OF ITS CLEAN WATER ACT PERMIT

9. Bluefin Bay discharges wastewater directly into Lake Superior pursuant to the its ("NPDES") permit No. MN-0054593.

10. Lake Superior is the largest and northernmost of the Great Lakes of North America. It is the world's largest freshwater lake by surface area and holds 10% of the world's surface freshwater.

11. Lake Superior is home to numerous freshwater fish including salmon and trout, and borders the natural habitat of wolves, bears, moose, loons, and numerous other wildlife.

12. Lake Superior's Minnesota Shoreline, often referred to as the North Shore, is exceptionally scenic and regularly enjoyed by visitors who camp, hike, fish, kayak, boat, and visit to simply enjoy the views, peace and natural beauty it offers.

13. Bluefin Bay is located on the North Shore of Lake Superior, within or in close proximity to the city of Tofte, Minnesota.

14. Bluefin Bay's NPDES permit strictly limits the amount of allowable pollutants in the Facility's wastewater discharges into Lake Superior. But despite its strict NPDES permit limits, Bluefin Bay has, for years, repeatedly and on an ongoing basis, discharged wastewater directly into Lake Superior with pollutant levels that violate its NPDES permit limits for mercury, fecal matter, coliform and suspended solids, which are in turn violations of the Clean Water Act.

## CWA PRE-SUIT NOTICE

15. On October 28, 2021, in accordance with 33 U.S.C. § 1365(b)(1)(A), Plaintiff provided notice of intent to file suit under the Federal Clean Water Act (60-Day Notice Letter) to the Administrator of the Environmental Protection Agency (EPA), the Regional Administrator of EPA Region 5, the Commissioner of the Minnesota Pollution Control Agency, and to Defendant.

16. The Notice Letter provided Defendant with sufficient information to determine the CWA requirements Plaintiff alleges Defendant violated, the activity alleged to constitute the violations, sufficient information to determine the date, location and person responsible for the violations, and the contact information for Plaintiff and Plaintiff's counsel. Among other things, the Notice letter identified 312 specific days between November 30, 2018, and August 31, 2021, when Defendant had discharged wastewater into Lake Superior with pollutant levels that violate its NPDES permit limits and exceedance details including the subject outfall, parameter, limit type, percent exceedance, exceedance counts by pollutant, the number of exceedances, the days with exceedances, and the dates of the exceedances, all as set forth on Exhibit A hereto.

17. Defendant's unlawful discharges included ongoing and repeated violations of, among other things, mercury by as much as 94% of the permitted discharge, fecal matter by as much as 43% of the permitted discharge, coliform by as much as 43% of the permitted discharge and suspended solids by as much as 111% of the permitted discharge.

18. The Notice Letter also advised Defendant that EPA records designate the Facility's current CWA compliance status as "Non compliant" and show that the Facility has been designated as Non-complaint with its CWA permit for five of the last 12 quarters.

19. As of the date of this filing, the Defendant continues to be designated as Non-compliant with its CWA permit by the EPA.

20. 33 U.S.C. § 1319 (g)(6)(B) provides that governmental action cannot bar a CWA citizen suit unless it either was commenced before the 60-day notice letter or the citizen suit is not filed more than 120 days after the 60-day notice letter.

21. Minnesota is a "delegated state" such that the EPA has delegated enforcement authority under the CWA to the MPCA.

22. No enforcement action was commenced before the 60-day notice letter as to the violations identified in the 60-day notice letter.

23. Following receipt of the October 28, 2021, 60-day Notice Letter, Defendant entered into a "compliance agreement" with the State of Minnesota Pollution Control Agency (MPCA). The "compliance agreement" was executed by Defendant on December 28, 2021, and was effective as of the date the MPCA executed it on January 4, 2022.

24. More than 60 days have passed since the 60-day Notice Letter was sent.

25. Less than 120 days have passed since the 60-day Notice Letter was sent and the date this action was filed and therefore commenced.

26. 33 U.S.C. § 1319 (g)(6)(B) therefore bars any effort by Defendant to contend that this action is barred by a diligent prosecution. See e.g., *Black Warrior Riverkeeper, Inc. v. Cherokee Mining*, LLC., 548 F.3d 986 (11th Cir. 2008).

27. Upon information and belief, Defendant requested the state action and "compliance agreement."

28. Defendant participated in the negotiation and drafting of the "compliance agreement."

29. The "compliance agreement" was reached without the benefit of any public comment or scrutiny.

30. The "compliance agreement" was reached without the benefit of any comment or scrutiny by Plaintiff or any of Plaintiff's membership.

31. The "compliance agreement" did not provide for continuing jurisdiction to enforce its terms.

32. The "compliance agreement" did not provide for the payment of any penalty amount at all even though the CWA makes penalties for polluters who violate the terms of their permits mandatory. In fact, the "compliance agreement" expressly waived its right to seek any penalties or exercise "any administrative, legal or equitable remedies available to the MPCA to address the alleged violations [addressed by the compliance agreement], as long as the Regulated Party [Defendant] performs according to and has complied with the terms and conditions contained in [the compliance agreement]."

33. The "compliance agreement" does not reflect any attempt by the MPCA to recoup or even calculate the economic benefit Defendant obtained by virtue of its non-compliance and, upon information and belief, the MPCA did not do so.

34. The "compliance agreement" does not address all of the violations identified in the 60-day notice letter.

35. Nothing in the "compliance agreement" indicates that the MPCA is satisfied that the alleged violations have been fully addressed and are not ongoing.

36. The "compliance agreement" indicates that the MPCA merely conducted a "file review" and did not inspect the Defendant's facility; instead reciting that "the Regulated Party [Defendant] investigated the cause and took action to prevent future reoccurrence."

37. The "compliance agreement" does not describe the investigation Defendant allegedly undertook, the findings regarding the cause of Defendant's past pollution, nor any of the action allegedly taken to prevent future reoccurrence.

38. The "compliance agreement" provides that Defendant agreed to "submit a standard operating procedure (SOP) to be implemented on discovery of any *future* effluent limit violation. At a minimum, the SOP shall identify 1) actions and methods used to investigate the cause of the violation; 2) actions to be taken to prevent future reoccurrence; and 3) actions to be taken to reduce adverse impact resulting from the violation."

39. The "compliance agreement" also required Defendant to "submit a certification statement acknowledging that a report, per NPDES/SDS permit No. MN0054593, requirement entitled Effluent Violations for any future effluent limit violation" and to "follow the steps as required by NPDES/SDS permit No. MN0054593" if Defendant "discovers that non-compliance with a condition of the permit has occurred which could endanger human health, public drinking water supplies, or the environment." Defendant was obligated to do these things anyway.

40. In exchange, the MPCA expressly waived its right to seek any penalties, for *past or future violations*, or exercise "any administrative, legal or equitable remedies available to the MPCA to address the alleged violations [addressed by the compliance agreement], as long as the Regulated Party [Defendant] performs according to and has complied with the terms and conditions contained in [the compliance agreement]."

41. The MPCA cited Bluefin Bay waste water treatment plant for excellence in 2018.

42. As of the date of this filing, according to the Environmental Protection Agency, over five years preceding October 22, 2021, Bluefin Bay has violated its Clean Water Act permit on three-hundred and twelve (312) days, has failed to comply with its Clean Water Act permit for 7 out of 12 quarters, and is currently in violation of its Clean Water Act Permit.

## **STANDING**

43. Plaintiff's membership includes at least one individual who resides in the State of Minnesota and has, for many years, visited and enjoyed the quietude and natural beauty of the North Shore, including visits to Tofte Town Park. Blue Fin Bay's repeated unlawful discharges of Mercury, Fecal matter, Coliform and Suspended Solids into Lake Superior lessen the aesthetic and recreational values of the North Shore in and near Tofte and diminish this person's enjoyment of the North Shore in and near Tofte, Minnesota.

## COUNT I
## THE CLEAN WATER ACT
## ON BEHALF OF PLAINTIFF INDIVIDUALLY

44. Plaintiff restates and realleges all of the foregoing as if set forth here in full.

45. Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." To achieve those goals, the CWA expressly prohibits the "discharge of any pollutant" where such discharges do not comply with the terms of any applicable NPDES permit.

46. Once regulated by an NPDES permit, discharges must strictly comply with all of the terms and conditions of the permit.

47. Violation of the terms or conditions of and NPDES permit is a violation of the Clean Water Act.

48. In addition to specific effluent limitations, the Facility's NPDES permit also requires that the permit holder "shall at all times properly operate" the Facility and in accordance with an asset management program which includes adequate funding, operator staffing and training, rehabilitation and replacement of assets when necessary.

49. Every day a facility is operated in violation of its NPDES permit is a separate and distinct violation of the permit and the CWA.

50. The CWA authorizes citizens to bring suit against any person who is "alleged to be in violation" of an effluent standard or limitation under the CWA.

51. The CWA provides for appropriate injunctive relief preventing further violations of the Clean Water Act, mandatory civil penalties, declaratory relief, and also

allows a prevailing plaintiff to recover costs, including attorneys' and experts' fees associated with a citizen enforcement action.

52. Attached as Exhibit A hereto is a list of the NPDES effluent limit exceedances Plaintiff seeks to redress under the CWA in this case.

53. Exhibit A is derived from the Facility's self-reported Discharge Monitoring Reports, as provided to the EPA.

54. Each of the effluent limit exceedances identified on Exhibit A are violations of the Facilities NPDES permit and, in turn, are therefore violations of the CWA.

55. Defendant's violations of its NPDES permit are continuing, ongoing, and recurring. According to the EPA, the Facility's current CWA compliance status is "noncompliance."

## CLASS ALLEGATIONS

### A.  Definition of the Class

56. Plaintiff brings the following Counts II and III of this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as: All individuals who have visited Tofte Town Park from November 30, 2018, to August 31, 2021. Tofte Town Park is immediately adjacent to Bluefin Bay and shares access to the same stretch of Lake Superior shoreline. Excluded from the Class are Defendant and its affiliates, predecessors, successors, officers, directors, agents, servants, or employee, and the immediate family members of such persons. Plaintiff

reserve the right to modify the class definition and/or propose one or more subclasses if discovery reveals such modifications are appropriate.

### B.     Numerosity

57.     Upon information and belief, Tofte Town Park has existed since 1922. Since that time, it has been continually open to the public, and has been rented and hosted weddings and family gatherings for years and years. It is also an ideal place to simply enjoy listening to Lake Superior's waves and enjoy the scenery and therefore regularly attracts visitors, especially during the summer months. There are an average of 9,700,000 visitors to Minnesota State parks each year. See e.g., https://www.dnr.state.mn.us/faq/mnfacts/state_parks.html. It defies common sense to suggest more than 40 people have not visited Tofte Town Park the members of the Class are therefore so numerous that joinder of all parties is impracticable. Indeed one or more of Plaintiff's members have personally observed more than 40 people at Tofte Town Park.

### C.     Commonality

58.     Numerous common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to the following:

- a. whether Defendant's conduct constitutes a public nuisance
- b. whether Defendant's conduct constitutes a private nuisance
- c. whether and how Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly and/or negligently failed to construct, maintain and/or operate its waste water treatment facility;
- d. the proper injunctive relief; and
- e. the measure of nominal, punitive and other damages available to Plaintiff and the Class.

**D. Typicality**

59. Plaintiff has the same interests in this matter as all the other members of the Class, and Plaintiff's claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, rely upon the same legal theories and seek the same type of relief. The claims of Plaintiff and the other Class members have a common origin and share a common basis. The claims originate from the same failure of the Defendant to property construct, maintain and/or operate the Bluefin Bay wastewater treatment facility.

**E. Adequacy of Representation**

60. Plaintiff's claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiff as a representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and does not have interest adverse to the Class. Plaintiff has retained the services of counsel, who are experienced in complex litigation including class action litigation. Plaintiffs' counsel will adequately prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class members.

**F. Class Treatment Is the Superior Method of Adjudication**

61. A class action is superior to other methods of the fair and efficient adjudication of the controversies raised in this Complaint because:

a. Individual claims by the Class members would be impracticable as the costs of pursuit would exceed what any one Class member has at stake;
b. Upon information and belief, no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;
c. The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and
d. The proposed class action is manageable.

## COUNT II
## PUBLIC NUISANCE
## ON BEHALF OF PLAINTIFF INDIVIDUALLY AND ALL OTHERS SIMILARLY SITUATED

62. Plaintiff and the Class restate and reallege all of the foregoing as if set forth here in full.

63. Defendant's unlawful discharges of Mercury, Fecal Matter, Coliform and Suspended Solids into Lake Superior "unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public; or interferes with, obstructs, or renders dangerous for passage, any … waters used by the public" and therefore constitutes a public nuisance under Minn. Stat. § 609.74.

64. Plaintiff and other individuals who have visited Tofte Town Park suffered damage or injury that is special to them and different from damage or injury sustained by the general public as a result of Defendant's unlawful pollution of Lake Superior. The very purpose of parks is ".. to protect and perpetuate extensive areas of the state possessing those resources which illustrate and exemplify Minnesota's natural phenomena and to provide for the use, enjoyment and understanding of such resources without impairment …" Minn. Stat. § 86A.05, Subd. 2. Parks like Tofte Town Park on the North Shore of Lake Superior

contain some of Minnesota's most valued natural resources. Tofte Town Park is immediately adjacent to Bluefin Bay and shares access to the same stretch of Lake Superior shoreline. It is an ideal place to simply enjoy listening to Lake Superior's waves and enjoy the natural environment. Tofte Town Park is a special place, patronized for a special purpose, and its users are distinctly impacted by pollution occurring in the immediate vicinity of the park in a way that is clearly different from the general public.

## COUNT III
## PRIVATE NUISANCE
## ON BEHALF OF PLAINTIFF INDIVIDUALLY AND ALL OTHERS SIMILARLY SITUATED

65. Plaintiff and the Class restate and reallege all of the foregoing as if set forth here in full.

66. Private nuisance is defined by Minnesota Stat. § 561.01 as follows:

> Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by judgment the nuisance may be enjoined or abated, as well as damages recovered.

67. Defendant's unlawful discharges of Mercury, Fecal Matter, Coliform and Suspended Solids into Lake Superior constitutes a private nuisance as defined by Minn. Stat. § 561.01 for which Defendant is liable to Plaintiff and the Class for all damages arising therefrom, including compensatory, exemplary, injunctive and punitive relief since Defendant's actions were, and continue to be, intentional, willful, malicious and made with a conscious disregard for the rights of Plaintiffs, entitling Plaintiffs to nominal, compensatory and punitive damages.

## COUNT IV
## NEGLIGENCE
## ON BEHALF OF PLAINTIFF INDIVIDUALLY AND ALL OTHERS SIMILARLY SITUATED

68. Plaintiff and the Class restate and reallege all of the foregoing as if set forth here in full.

69. Defendant negligently and improperly constructed, maintained and/or operated the Bluefin Bay waste water treatment facility.

70. Defendant's repeated violations of the CWA constitutes negligence per se.

71. A properly constructed, operated, and maintained wastewater treatment plant will not polluted the pristine waters of Lake Superior with Mercury, Fecal Matter, Coliform and Suspended Solids, violating its Clean Water Act permit on three-hundred and twelve (312) days since November 30, 2018, and failing to comply with its Clean Water Act permit for 7 out of 12 quarters.

72. The conduct of Defendant constitutes gross negligence and reflects a substantial lack of concern for and deliberate indifference to whether an injury resulted to Plaintiff and the Class.

73. Defendant's gross negligence was malicious and made with a wanton or reckless disregard for the safety of Plaintiff and the Class, which entitles Plaintiff and the Class to an award of nominal, compensatory, exemplary, and punitive relief.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Declare Defendant to have violated and to be in violation of the Clean Water Act and the Facility's NPDES permit by committing each of the violations described above, including similar violations that occur after the filing of this Complaint;

b. Determine the number of days of violation committed by Defendant;

c. Order Defendant to comply with the Clean Water Act and Defendant's NPDES permit, and to refrain from further violations of the effluent standards and limitations in the permit;

d. Order Defendant to implement measures to remedy, mitigate, or offset the harm to the environment caused by the violations alleged above;

e. Assess an appropriate civil penalty against Defendant for each day of violation of the Clean Water Act and the NPDES permit, as provided by 33 U.S.C. § 1319(d);

f. Award Plaintiffs their costs of litigation (including reasonable attorney and expert witness fees); as provided by 33 U.S.C. § 1365(d);

g. Certify the proposed class;

h. Designate Plaintiff as representative of the proposed class and designate Plaintiff's counsel as Class Counsel;

i. Enjoin Defendant from any further unlawful discharges of Mercury, Fecal Matter, Coliform and Suspended Solids or other pollution into Lake Superior;

j. Award Plaintiff and Class members nominal, compensatory, and punitive damages; and

k. Award such other relief as the Court deems appropriate.

Dated: February 9, 2022

                              **THRONDSET MICHENFELDER, LLC**

                              By:/s/Patrick Michenfelder_____
                              Patrick W. Michenfelder (#024207X)
                              Chad A. Throndset (#0261191)
                              Cornerstone Building
                              One Central Avenue West, Suite 101
                              St. Michael, MN 55376
                              Tel: (763) 515-6110
                              Fax: (763) 226-2515
                              Email: pat@throndsetlaw.com
                              Email: chad@throndsetlaw.com
                              Attorney for Plaintiff