**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

CLEAN WATER AND AIR LEGACY, LLC,

                                                    Civil No. 22-386 (JRT/LIB)

                    Plaintiff,

v.

TOFTE WASTEWATER TREATMENT          **MEMORANDUM OPINION AND ORDER**
ASSOCIATION, *d/b/a Bluefin Bay on Lake*   **GRANTING IN PART AND DENYING IN**
*Superior WWTP*,                           **PART DEFENDANT'S MOTION TO DISMISS**
                                           **AND DENYING DEFENDANT'S MOTION**
                                           **FOR SUMMARY JUDGMENT**
                    Defendant.

---

Chad Throndset and Patrick W. Michenfelder, **THRONDSET MICHENFELDER, LLC**, One Central Avenue West, Suite 203, Saint Michael, MN 55376, for plaintiff.

Seth Leventhal, **LEVENTHAL PLLC**, 4406 West Forty-Second Street, Edina, MN 55416; Jeremy P. Greenhouse, **FREDRIKSON & BYRON, P.A.**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402; and Vanessa Lee Parvin Johnson, 7811 West Ninety-Fifth Street, Bloomington, MN 55438, for defendant.

Clean Water and Air Legacy, LLC ("CWAL"), on behalf of itself and a class of people who have recently visited Tofte Town Park along Minnesota's North Shore, brings this action against Tofte Wastewater Treatment Association ("Bluefin Bay"), asserting a claim under the Clean Water Act and state law claims of public nuisance, private nuisance, and negligence stemming from Bluefin Bay's alleged pollution of Lake Superior and harm to nearby Tofte Park. Bluefin Bay now moves to dismiss all claims or, in the alternative, moves for summary judgment on all claims. Because CWAL has not alleged facts sufficient

to state a public nuisance or a private nuisance claim, the Court will grant the Motion to Dismiss only on those claims. However, because CWAL has alleged enough facts at this stage to support its claims for violation of the Clean Water Act and negligence, the Court will deny Bluefin Bay's Motion to Dismiss in all other aspects. Finally, because issues of material fact remain for the remaining claims, the Court will deny Bluefin Bay's Motion for Summary Judgment.

**BACKGROUND**

CWAL is an organization formed to advocate for clean waterways and air and the preservation of natural resources through enforcement of the country's environmental laws. (Am. Compl. ¶ 5, Apr. 19, 2022, Docket No. 9.) Bluefin Bay is a facility located on the North Shore of Lake Superior in Tofte, Minnesota and discharges wastewater directly into Lake Superior pursuant to its National Pollutant Discharge Elimination System ("NPDES") permit, No. MN-0054593. (*Id.* ¶¶ 6, 9.) CWAL alleges that for 312 days since November 30, 2018, Bluefin Bay has intermittently failed to comply with its NPDES permit and is currently in violation of that permit. (*Id.* ¶ 3.) On October 28, 2021, in accordance with 33 U.S.C. § 1365(b)(1)(A), CWAL provided notice of intent to file suit under the Federal Clean Water Act ("60-Day Notice Letter") to the administrator of the Environmental Protection Agency ("EPA"), the regional administrator of EPA Region 5, the commissioner of the Minnesota Pollution Control Agency ("MPCA"), and to Bluefin Bay. (*Id.* ¶ 15.)

Following receipt of the 60-Day Notice Letter, Bluefin Bay entered into a "Compliance Agreement" with the MPCA, effective January 4, 2022.  As part of that agreement, the MPCA waived its right to seek penalties or exercise "any administrative, legal or equitable remedies available to the MPCA to address the alleged violations . . . as long as the Regulated Party performs according to and has complied with the terms and conditions contained in [the compliance agreement]."  (*Id.* ¶ 32.)  According to that agreement, Bluefin Bay agreed to "submit a standard operating procedure (SOP) to be implemented on discovery of any *future* effluent limit violation" and to "follow the steps as required by NPDES/SDS permit No. MN0054593" if Bluefin Bay "discovers that non-compliance with a condition of the permit has occurred which could endanger human health, public drinking water supplies, or the environment."  (*Id.* ¶¶ 38, 39 (emphasis in original).)

On April 19, 2022, CWAL filed an Amended Complaint alleging violations of the Clean Water Act, public nuisance, private nuisance, and negligence on behalf of a class defined as "[a]ll individuals who have visited Tofte Town Park from November 30, 2018, to August 31, 2021." (*Id.* ¶¶ 44–73.)  Tofte Town Park is immediately adjacent to Bluefin Bay and shares access to the same stretch of Lake Superior shoreline.  (*Id.* ¶ 56.)  The Amended Complaint alleges that CWAL's membership includes at least one individual who resides in Minnesota and has visited and enjoyed the quietude and natural beauty of the North Shore, including visits to Tofte Town Park for many years,  (*Id.* at ¶ 19.), but

-3-

that Bluefin Bay's repeated unlawful discharges lessen the aesthetic and recreational values of the North Shore in and near Tofte and diminish this person's enjoyment of the North Shore in and near Tofte, Minnesota.  (*Id.* at ¶ 43.)  CWAL alleges that Bluefin Bay was continuously violating its NPDES permit at the time it filed suit.  Lastly, CWAL seeks an injunction and civil penalties to redress those injuries.  (*Id.* ¶ 4, Relief Requested.)  On May 13, 2022, Bluefin Bay moved to dismiss all claims based on lack of subject matter jurisdiction and failure to state a claim and, in the alternative, moved for summary judgment on all claims.  (Mot. Dismiss, May 13, 2022, Docket No. 10.)

## DISCUSSION

### I.   RULE 12(B)(1) SUBJECT MATTER JURISDICTION

#### A.  Standard of Review

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims.  The party seeking to invoke a federal court's subject matter jurisdiction bears the burden of showing, by a preponderance of the evidence, that the court has jurisdiction.  *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8thCir. 2011).  A court must dismiss an action if it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'"  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule

12(b)(6)." *Id.* (internal citations omitted). The Court, therefore, may also consider "materials that are necessarily embraced by the pleadings." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks omitted).[1] The Court also accepts as true all facts alleged in the complaint construing all reasonable inferences in the plaintiff's favor. *Id.* "The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Osborn*, 918 F.2d at 729 n.6 (citations and internal quotation marks omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (citations omitted).

### B.  Analysis

Bluefin Bay brings a factual attack on the Court's subject matter jurisdiction by presenting a declaration of an MPCA Compliance Coordinator regarding the steps MPCA took in response to the alleged violation and evidence of the Compliance Agreement. Bluefin Bay asserts the Court does not have subject matter jurisdiction because CWAL has failed to show injury-in-fact and CWAL has not established associational standing.

---

[1] "[M]aterials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (internal quotation marks and citation omitted)).

Article III of the Constitution limits federal court jurisdiction to cases or controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citing U.S. Const. art. III, § 2). Therefore, Plaintiffs must demonstrate standing to sue by showing that they have suffered an injury-in-fact that is both fairly traceable to the defendant's conduct and likely to be redressed by the relief sought. *Id.* at 338.

To establish an injury-in-fact, plaintiffs must show their injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). During pleading, plaintiffs must clearly allege facts demonstrating the elements of standing. *Id.* at 338. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

The Supreme Court has recognized that a future injury can establish Article III standing, but the future injury must be "certainly impending," or that there is "a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). And in an environmental suit in particular, "plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged

activity." *Friends of the Earth,* 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Here, CWAL meets the low burden required at this stage of litigation. *See Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009) (explaining that general factual allegations of injury may suffice to establish standing); *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 674 (5th Cir. 1992) (explaining that the Article III standing inquiry is "not too heavy a burden on a prospective plaintiff because even 'a probabilistic benefit from winning a suit is enough injury in fact to confer standing' under the Constitution" (quoting *N. Shore Gas v. EPA*, 930 F.2d 1239, 1242 (7th Cir. 1991). In its Amended Complaint, CWAL avers that Bluefin Bay unlawfully polluted Lake Superior by discharging wastewater directly into Lake Superior with repeated substantial and unlawful amounts of mercury, fecal matter, coliform and suspended solids. (Am. Compl. ¶¶ 2–3, 9, 14, 17, 42, 54.) The Amended Complaint alleges that CWAL's membership includes at least one individual who resides in Minnesota and has visited and enjoyed the quietude and natural beauty of the North Shore, including visits to Tofte Town Park for many years, but that Bluefin Bay's repeated unlawful discharges lessen the aesthetic and recreational values of the North Shore in and near Tofte and diminish this person's enjoyment of the North Shore in and near Tofte, Minnesota. (*Id.* ¶ 43.). Lastly, the complaint seeks an injunction and civil penalties to redress those injuries. (*Id.* ¶ 4, Relief Requested.)

Accepting these allegations as true, CWAL has standing to bring this suit because it alleges that the aesthetic and recreational harm to Tofte Park suffered by at least one of its members is fairly traceable to the Bluefin Bay's conduct of discharging waste into the nearby water, and the relief sought—an injunction preventing future harm and civil penalties to address past and ongoing harm—would redress such harm.   CWAL's constitutional standing is established on behalf of this member.   CWAL's burden at this stage is not to prove such claims but only to sufficiently allege them in the initial pleadings, as it has done.   The Court thus finds that CWAL has established standing, and the Court has subject matter jurisdiction over the case.   As such, the Court will deny Bluefin Bay's Motion to Dismiss in this respect.

## II.      RULE 12(B)(6) FAILURE TO STATE A CLAIM

### A.  Standard of Review

Having found subject matter jurisdiction, the Court turns to the Bluefin Bay's next argument that CWAL's Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.   In reviewing a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When considering a motion to dismiss, "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quotation omitted).

**A.    Clean Water Act**

"§ 505(a) of the Clean Water Act does not permit citizen suits for wholly past violations . . . ." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987).  § 505 confers jurisdiction over citizen suits that make a good-faith allegation of continuous or intermittent violation.  *Gwaltney*, 484 U.S. at 64.  "Congress intended a good-faith allegation to suffice for jurisdictional purposes," such that a defendant need

not "be in violation" at the suit's commencement, but rather a defendant "be *alleged* to be in violation. *Id.* at 64–65 (emphasis in original).

Bluefin Bay first asserts that because there have only been two alleged violations in the two years prior to the date the Complaint was filed and the data does not establish an ongoing violation with respect to each parameter at issue, CWAL cannot establish a good faith belief that the alleged violations are ongoing.

At this stage, a question remains as to whether Bluefin Bay's alleged discharges are "wholly past." The trend of the discharges based on the evidence CWAL provided shows that violations have happened every year since 2018, which could conceivably rise to the level of intermittent or sporadic violations. *See Gwaltney,* 484 U.S. at 57 (a Clean Water Act citizen suit must be based upon on-going violations, "that is, a reasonable likelihood that a past polluter will continue to pollute in the future."). If these violations happen every year, there is a reasonable likelihood they will continue that trend. Additionally, CWAL alleges that Bluefin Bay was continuously violating its NPDES permit at the time it filed suit, even though Bluefin Bay may not have been in violation at the exact moment the suit was filed. (Am. Compl. ¶¶ 14, 17.); *see Gwaltney* , 484 U.S. at 64 (Disagreeing with defendant that plaintiffs must prove their allegations of ongoing noncompliance before jurisdiction attaches, finding that "[t]he statute does not require that a defendant 'be in violation' of the Act at the commencement of suit; rather, the statute requires that a defendant be '*alleged* to be in violation.'").

Moreover, CWAL alleges that the Compliance Agreement between Bluefin Bay and the MPCA does not address all the alleged violations, which supports a reasonable inference that the alleged violations have not stopped and raises questions about what remedial action Bluefin Bay has actually taken and whether it serves to stop all possible future violations.  (*Id.* ¶¶ 35–39.)

CWAL has alleged enough to state a claim for a violation of the Clean Water Act, and thus the Court will deny Bluefin Bay's motion to dismiss as to this claim.

### B.    Public Nuisance

Bluefin Bay next asserts that CWAL's Complaint fails to state a claim for public nuisance because it does not allege that its harmed member or any other member owns property adjacent to Tofte Park or in the area where the alleged discharge occurred, or that there is a special or peculiar harm suffered by this member.  In support, it points to the Minnesota Supreme Court's decision in *Hill v. Stokely-Van Camp, Inc.*, 109 N.W.2d 749, 753 (Minn. 1961), positing that public nuisance is generally reserved for prosecution by the state of Minnesota and the only exception is when a private person has suffered some special or peculiar damage not common to the general public.

As Bluefin Bay suggests, under *Hill*, a private person may bring a cause of action for public nuisance if "the plaintiff has suffered some special or peculiar damage not common to the general public, and in such cases only."  109 N.W.2d at 753 (quotation omitted); *see also North Star Legal Found. v. Honeywell Project*, 355 N.W.2d 186, 189

(Minn. App. 1984) (noting requirement of allegation of "special or peculiar damage not common to the general public" in order to bring private action for relief from public nuisance (quotation omitted)), *review denied* (Minn. Jan. 2, 1985); *Moore v. Fletcher*, No. A16-1922, 2017 WL 3863835, at *2 (Minn. Ct. App. Sept. 5, 2017) (same).

Moreover, the few Minnesota cases that have analyzed a private right of action in public nuisance have generally found that a public nuisance cause of action existed where plaintiff landowners had suffered some interference with the free use of their private property. *See, e.g., Wilder v. DeCou*, 26 Minn. 10, 19, 1 N.W. 48, 54–55 (1879) (holding that a property owner suffered a peculiar injury by the obstruction of a portion of a public street immediately in front of his premises, constituting interference with the free use of his private property).

In *Viebahn*, the Minnesota Supreme Court similarly applied the rule and concluded that plaintiffs could maintain an action in public nuisance when they suffered injury from the construction of a bridge that obstructed their ability to operate a line of steamboats on the Mississippi River. *Viebahn v. Bd. of Comm'rs of Crow Wing Cnty.*, 104 N.W. 1089, 1090 (Minn. 1905). The Court noted that while it was true that the general public had a right to navigate the Mississippi River and the obstruction would prevent them from doing so to the same extent as the plaintiffs, it found that "the public is not engaged in that sort of business, and the right is one in contemplation only" because the plaintiffs "were in fact engaged therein at the time of the construction of the bridge and have been wholly

prevented from continuing therein.  *Viebahn*, 104 N.W. at 1094.  Thus, the Court held that this injury was special to them and distinct from the general public.  *Id.*

Such circumstances are distinguishable from this case.  CWAL asserts that a particular subsect of the general public—those who have visited Tofte Park—have suffered a harm that is special to them.  However, CWAL fails to show how this harm is different from that of the general public.  In fact, members of the general public are precisely the people that enjoy Tofte Park.  There is no allegation that these visitors have some special relationship to the park, such as having ownership in land adjacent to the park, an exclusive membership, or park employment.  Enjoying Tofte Park is a common privilege enjoyed by the general public, of which CWAL's membership is included.  Thus, any harm to Tofte Park would be a harm shared by the general public.

Because CWAL has not alleged that Bluefin Bay caused them to suffer a special or peculiar damage that was not common to the general public, they have failed to set forth a legally sufficient public-nuisance claim.  Accordingly, the Court will grant Bluefin Bay's motion to dismiss as it relates to this claim.

### C.    Private Nuisance

Bluefin Bay next argues that CWAL cannot support a claim for private nuisance because (1) private nuisance is limited to real property interests that CWAL has not alleged any of its members have, (2) CWAL has not alleged that the discharges at issue are injurious to health, indecent or offensive to the senses, or an obstruction to the free

use of property, and (3) CWAL cannot show that the alleged nuisance was material and substantial, considering that the EPA designated the discharges insignificant and MPCA did not impose an administrative penalty because of the low magnitude and infrequency of the discharges.

Minnesota Statute § 561.01 defines a private nuisance as anything "which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property."

In creating a private right of action for private nuisance, the statute allows an action to be brought "**by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance**, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered." *Id.* (emphasis added).

On its face, the statute appears to offer the private right of action to two different persons: (1) a person whose property is injuriously affected, and (2) a person whose personal enjoyment is lessened by the nuisance.  However, Minnesota case law has clarified that even this second group must also have a real property interest at stake. *Ebert v. Gen. Mills, Inc.*, 48 F. Supp. 3d 1222, 1234 (D. Minn. 2014); *Anderson v. State, Department of Nat. Res.*, 693 N.W.2d 181, 192 (Minn. 2005) ("Private nuisance is limited to real property interests."); *N. Star Legal Found. v. Honeywell Project*, 355 N.W.2d 186, 189 (Minn. Ct. App. 1984) (finding that appellants did not have a cause of action under section 561.01 because they did not allege any interest in the affected property); *cf.*

*Schrupp v. Hanson*, 235 N.W.2d 822 (Minn. 1975) (finding a private nuisance claim might exist for a plaintiff whose property was directly adjacent to a poultry and hog farm).

CWAL does not allege that any of its members have a real property interest in Tofte Park.  Instead, in briefing it suggests that, as members of the public generally, its members somehow have a real property interest in Tofte Park.  Mere enjoyment of a public park does not convey a real property interest in that park.  *See Am. Computer v. Jack Farrell Implement,* 763 F. Supp. 1473, 1494 (D. Minn. 1991) ("The ownership or rightful possession of land necessarily involves the right not only to the unimpaired condition of the property itself, but also to some reasonable comfort and convenience in its occupation.  There can be no nuisance if a party cannot show an injury stemming from an interest in land." (internal citations omitted)); *Property Interest*, Black's Law Dictionary (11th ed. 2019) ("An interest, perhaps including rights of possession and control, held by an owner, beneficiary, or remainderman in land, real estate, business, or other tangible items.").

Park visitors have neither an ownership stake nor rightful possession of it.  Taken to its logical conclusion, this would mean that all members of the public who visit a park have a property interest in that park.  This is not the case.[2]  Because CWAL has not alleged

---

[2] At best, such enjoyment is closer to a public easement, which does not convey an estate but instead passes only a right of use.  *See State v. Hess*, 684 N.W.2d 414, 420 (Minn. 2004) ("An easement . . . is an entitlement to the use or enjoyment of the land rather than an interest in the real property itself.").

facts sufficient to infer a real property interest for any of its members in Tofte Park, it has failed to state a claim for private nuisance, and the Court will grant Bluefin Bay's Motion to Dismiss with regard to this claim.

### D.   Negligence and Negligence Per Se

To state a cause of action for negligence under Minnesota law, a plaintiff must demonstrate "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care, was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011) (citing *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001)).  Although negligence per se may be pleaded separately from negligence, the two causes of action are inseparably intertwined. *Anderson*, 693 N.W.2d at 189.  While the "standard for ordinary negligence is the traditional standard of the reasonable man of ordinary prudence," while "negligence per se may exist when the reasonable person standard is supplanted by a standard of care established by the legislature."  *Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn. 1981) (internal quotation marks and citation omitted); *accord Elder v. Allstate Ins. Co.*, 341 F. Supp. 2d 1095, 1099 (D. Minn. 2004).  Stated another way, courts "adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation" in negligence per se cases.  Restatement (Second) of Torts § 286 (1965).  In either cause of action, a plaintiff must still prove that he was injured and that the defendant's conduct was a proximate cause of their injury.

-16-

Bluefin Bay argues that CWAL has failed to plead facts sufficient to support the injury-in-fact, causation and damages elements of a negligence claim.

Here, CWAL pleads facts sufficient to show duty and breach by alleging that Bluefin Bay violated the Clean Water Act.  Specifically, CWAL has alleged the conduct that proximately caused their damages:  Bluefin Bay negligently and improperly constructed, maintained, and/or operated its facility, causing Bluefin Bay to violate the Clean Water Act; because Bluefin Bay repeatedly violated the Clean Water Act, its actions constitute negligence per se which conclusively establishes duty and breach; and that a properly constructed, operated, and maintained wastewater treatment plant will not pollute Lake Superior with mercury, fecal matter, coliform, and suspended solids. Accordingly, Bluefin Bay violated its NPDES permit.  If proven, that statutory violation alone is enough, under negligence per se, to demonstrate a breach of a duty of care, so long as the CWAL member is part of the class of persons the statute is designed to protect, and the harm is of the type contemplated by the statute. *Anderson*, 693 N.W.2d at 189 (explaining this two-part test).  The purpose of the Clean Water Act is to regulate the discharges of pollutants into navigable waters, 33 U.S.C. § 1251, and it allows citizens to bring actions against polluters as the class of persons protected. *Gwaltney*, 484 U.S. at 49.  Therefore, CWAL's allegations that Bluefin Bay is polluting Lake Superior to the detriment of its membership satisfies the two-part requirement.

CWAL has also alleged facts to satisfy proximate causation: Bluefin Bay violated its NPDES Permit, thus violating the Clean Water Act, and that was a substantial factor in the CWAL member's injury of lessened value and enjoyment of the aesthetic beauty of Tofte Park and the North Shore.  CWAL has sufficiently pleaded that Bluefin Bay ought to have anticipated this result because of its alleged pollution.  *McDougall v. CRC Indus., Inc.*, 523 F. Supp. 3d 1061, 1072 (D. Minn. 2021).  Finally, CWAL pleads facts sufficient to show damages by alleging that one member was injured when their enjoyment of the park and North Shore was diminished aesthetically.

Though Bluefin Bay argues CWAL failed to allege specific harm to the **environment** (like "visible sludge" and "dead fish"), (Def. Mem. at 39, May 13, 2022, Docket No. 11), surviving a motion to dismiss only requires pleading damages for the **plaintiff**, which CWAL adequately alleges by stating that a member could no longer enjoy Tofte Park and the North Shore to the same extent they did before Bluefin Bay's alleged discharges.  *See Friends of the Earth,* 528 U.S. at 181 ("The relevant showing for Article III standing, however, is not injury to the environment but injury to the plaintiff.").  CWAL has alleged enough to survive the Motion to Dismiss as to the negligence claim, thus the Court will deny Bluefin Bay's Motion in this respect.

## III.    IMPROPER COLLATERAL ATTACK

Bluefin Bay contends that even if the claims survive, CWAL's Complaint is barred as an improper collateral attack on the MPCA's actions.  Bluefin Bay asserts that this is so

because CWAL's suit interferes with the Clean Water Act's preference for administrative agency enforcement actions over citizen suit enforcement.

An underlying principle of the Clean Water Act is that "the citizen suit is meant to supplement rather than to supplant" government enforcement action. *Gwaltney,* 484 U.S. at 60. Because the Environmental Protection Agency and many state agencies have statutory authority to proceed under the Clean Water Act by formal administrative action, diligent prosecution by the MPCA bars *subsequent* citizen suits for civil penalties.[3] 33 U.S.C. § 1319(g)(6). Additionally, an administrative enforcement agreement between MPCA and the polluter "will preclude a pending citizen suit claim for civil penalties if the agreement is the result of a diligently prosecuted enforcement process, however informal*." Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 357 (8th Cir. 1998).

In previous cases, courts have found an improper collateral attack where the MPCA began informal action to enforce an NPDES permit before a citizen suit issued its notice of intent to sue for the same violations, for which the MPCA had already diligently pursued a defendant to end permit violations, concluded compliance had been achieved,

---

[3] However, 33 U.S.C. § 1319(g)(6)(B) allows citizen suits to proceed, despite governmental enforcement for the same violations, if the citizen provided the required 60-day pre-suit notice of intent to sue before a civil or administrative action was commenced and if the citizen suit is filed within 120 days of the date the 60-day notice was given. CWAL contends that it has done so and thus its suit is not barred. However, because Bluefin Bay challenges CWAL's argument as to the MPCA's diligent prosecution efforts, the Court analyzes CWAL's claim on that basis alone.

and extracted a civil penalty that "exceed[ed] penalties imposed in similar cases" for past violations. *Comfort Lake*, 138 F.3d at 357.  The *Comfort Lake* Court was satisfied that the MPCA diligently prosecuted its enforcement demands through the termination of the NPDES permit and the negotiated civil penalty, and thus held that "the civil penalties [the MPCA] elected to extract in settling those demands may not be reconsidered in this citizen suit." *Id.*

In contrast, courts have found that citizens suits did not constitute an improper collateral attack where the state agency failed to actually assess a civil or administrative penalty, did not allow for citizen participation in the enforcement action, and failed to enforce its settlement/consent order.  *Friends of the Earth v. Laidlaw Envtl. Serv.*, Inc., 890 F. Supp. 470 (D.S.C. 1995).  In *Laidlaw*, the polluter asked the state to bring the action and the polluter prepared the complaint, and the court agreed with plaintiffs that the settlement agreement was entered into with "unusual haste" and without public input, which "trigger[ed] a heightened scrutiny into the settlement of the underlying case between [state agency] and [the polluter]." *Laidlaw*, 890 F. Supp. at 489–90.  In addition, the settlement agreement did not allow for the state agency's continuing jurisdiction to enforce the agreement or for stipulated penalties, and there was no attempt by the state agency to recoup or even calculate the economic benefit the discharger obtained by virtue of non-compliance. *Id*. at 490–91.  Accordingly, the citizen suit could proceed.

Bluefin Bay likens the case at bar to *Comfort Lake*, arguing that the MPCA brought action against them through a Compliance Agreement that covers the very violations raised in CWAL's complaint, the Compliance Agreement required a Standard Operating Procedure ("SOP") to address those same violations, and the MPCA approved the SOP. Even though no financial penalties were imposed, Bluefin Bay contends that under the agreement, the MPCA retains all rights to impose future penalties if they do not comply, which would include future penalties for violations of the permit.  Thus, Bluefin Bay asserts that *Comfort Lake* precludes CWAL's suit.

CWAL contends that MPCA's prosecution was not diligent because, similar to *Laidlaw*, the Compliance Agreement, requested by and essentially drafted by Bluefin Bay, was reached without the public's or CWAL's comment or scrutiny, did not provide for continuing jurisdiction to enforce its terms or a penalty/calculation of benefit derived by violations, did not indicate full redressal, and in exchange, the MPCA gave up a significant enforcement opportunity by waiving the right to seek penalties for past or future violations.

A "lenient penalty that is far less than the maximum penalty may provide evidence of non-diligent prosecution."  *Laidlaw*, 890 F. Supp at 491 (citing *Atlantic States Legal Found. v. Universal Tool & Stamping Co.,* 735 F. Supp. 1404, 1416 (N.D. Ind. 1990)).  Here, the MPCA imposed no penalty at all—as far as possible from the maximum penalty—making the MPCA's actions here more questionable than the non-diligent prosecution in

*Laidlaw*, which imposed a $100,000 civil penalty.  *See Laidlaw*, 890 F. Supp at 491, 493 (the Environmental Protection Agency's policy is that "civil penalties must recover at least the amount of the violator's economic benefit of noncompliance," which suggests "a state enforcement agency's failure to do so is some evidence that the agency's prosecution was not diligent.").  In *Comfort Lake*, by contrast, the court was satisfied that the penalty assessed **exceeded** penalties imposed in similar cases.  *Comfort Lake*, 138 F.3d at 357.

 Indeed, in *Comfort Lake*, the Eighth Circuit based its extended deference to MPCA in part on the fact that the agency had both terminated the defendant's permit **and** extracted a civil penalty.  *See id.*  This is not the case here.  That the MPCA performed an alleged cursory document-based review without a facility walkthrough may also weigh on the MPCA's diligence in these circumstances.

Ultimately, whether MPCA's administrative actions preclude a citizen suit under the Clean Water Act will depend on whether the facts are closer to the diligent prosecution of *Comfort Lake* or the non-diligent prosecution of *Laidlaw*.  At least at this stage, CWAL has alleged enough to imply MPCA's administrative enforcement may have been sufficiently non-diligent to allow a citizen suit to proceed.  Because CWAL has alleged enough to call into question whether MPCA's prosecution of the matter was diligent enough to preclude a citizen suit, at this stage, the citizen suit is not an improper collateral

attack on MPCA's administrative enforcement related to this matter.  The Court thus will deny Bluefin Bay's Motion to Dismiss in this respect.

## IV.     MOTION FOR SUMMARY JUDGMENT

In the alternative, Bluefin Bay moves for summary judgment on all claims. Summary judgment is appropriate where the are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

Bluefin Bay asserts that CWAL cannot establish a genuine issue of fact that the alleged violations are ongoing, and that even with the benefit of discovery, CWAL would

not be able to dispute their assertion that the violations are not ongoing because there is no realistic prospect that the alleged violations will continue.  Thus, Bluefin Bay contends it is entitled to summary judgment.  CWAL disagrees and instead asks the Court to deny summary judgment, arguing they are entitled to the benefit of discovery before any motion for summary judgment is entertained. CWAL notes that it need not **prove** its allegations of ongoing noncompliance before jurisdiction attaches; it is enough that it **alleges** in good faith Bluefin Bay is in violation.

Based on the factual record at this stage in the proceedings, CWAL has alleged genuine issues of material fact related to Bluefin Bay's actions to survive summary judgment.  As CWAL points out, a good faith allegation of an ongoing violation is all that is required and CWAL as adequately alleged such.  *See Gwaltney*, 484 U.S. at 64–65 ("§ 505 confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation.").  With such a limited record, there are still disputes over what caused the initial alleged violations, which could cast doubt on whether Bluefin Bay is adequately addressing those causes in their remedial efforts. An issue of fact also remains over whether the Compliance Agreement fully redresses all the alleged violations.  Taken together, these issues create a genuine issue of material fact as to whether Bluefin Bay's alleged violations are ongoing.  Therefore, the Court will deny Bluefin Bay's Motion for Summary Judgment.

**CONCLUSION**

Because CWAL properly alleges an injury-in-fact that this Court could redress, the Court has subject matter jurisdiction under Article III over all claims. Because CWAL properly alleges a violation of the Clean Water Act, common law negligence under Minnesota law and negligence per se based on alleged violations of the Clean Water Act, the Court will deny the Motion to Dismiss as it relates to Counts I and IV. Because CWAL has not alleged facts sufficient to support actions under public or private nuisance, the Court will grant Bluefin Bay's Motion to Dismiss for Counts II and III.

Finally, because genuine issues of fact remain as to whether Bluefin Bay's alleged violations of the Clean Water Act are ongoing, the Court will deny the Motion for Summary Judgment.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Docket No. 10] is **DENIED** in part and **GRANTED** in part as follows:

   a. The Court **DENIES** the Motion to Dismiss on Count I (Clean Water Act) and Count IV (negligence); and

   b. The Court **GRANTS** the Motion to Dismiss on Count II (public nuisance) and Count III (private nuisance).

2. Defendant's Motion for Summary Judgment [Docket No. 10] on all

remaining claims is **DENIED**.

DATED: January 4, 2023                                _____
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                          United States District Judge